NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID ZARISH,                                           :
                                                        :
       Plaintiff,                                :    Civ. No. 05-0596 (AET)
                                                        :
  v.                                                    :
                                                        :    OPINION
JO ANNE B. BARNHART, as                                 :
COMMISSIONER OF SOCIAL                                  :
SECURITY,                                               :
                                                        :
       Defendant.                                :

THOMPSON, U.S.D.J.

      This matter is before the Court on Plaintiff David Zarish's appeal of a final administrative decision by Defendant Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for Social Security disability insurance ("SSDI") benefits. The Court has jurisdiction to decide this matter pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the decision of the Commissioner is vacated and remanded.

BACKGROUND

A.    Plaintiff's Medical and Work History

      Plaintiff is 47 years old and has a high school education obtained through the general equivalency program. (R. at 22.)[1] His past work experience includes employment as a heating and air conditioning unit installer, a supervisor of air conditioning unit installers, and a municipal

---

[1] Unless otherwise noted, page citations are to the transcript of the administrative record filed by the Commissioner as part of her answer.

fire commissioner. (R. at 21.)

On September 6, 1996, Plaintiff was installing a diffuser in a work site ceiling when his right shoulder was struck by a live electric wire, electrocuting him and causing him to fall from the ladder upon which he was standing. (R. at 144.) As a result of injuries sustained in that accident, Plaintiff suffers from chronic pain, severe nerve damage, a brachial plexus injury and resulting arm problems, a neck disorder, headaches, and depression. (R. at 15, 34-35.) Although Plaintiff continued to work for some time after the accident, he alleges that he was forced to stop working between June 6, 2000 and March 30, 2004 (the "closed period of disability") because he was disabled by his maladies. (R. at 15, 34-35.)

B.   Procedural History

Plaintiff filed an application for SSDI benefits on July 25, 2002. (R. at 83.) Plaintiff's application was denied initially on April 8, 2003, and again upon reconsideration on July 18, 2003. (R. at 14, 68-70, 74-76.) Plaintiff requested a hearing, which was held on August 17, 2004 before the Administrative Law Judge (the "ALJ"). (R. at 14, 77.)

The ALJ issued an unfavorable decision on September 22, 2004. On November 4, 2004, Plaintiff requested a review of the ALJ's decision. (R. at 7.) The Appeals Council of the Social Security Administration denied the request for review on December 13, 2004. (R. at 4-6.) As a result, the ALJ's decision became the Commissioner's final decision. Having exhausted his administrative remedies, Plaintiff timely filed an appeal before this Court on January 27, 2005.

DISCUSSION

A.   Standard of Review

This Court has plenary review of the Commissioner's application of the law, and reviews

the Commissioner's findings of fact to determine whether they are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). The Court is required to review the entire record when making those determinations. 5 U.S.C. § 706; Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison Co. v. Nat'l Labor Relations Bd., 305 U.S. 197, 229 (1938)). The Commissioner's decision is afforded a great amount of deference; the Court should not "set the decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

B.   The Five-Step Evaluation to Determine Disability

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated a five-step evaluation to determine

whether an individual is disabled. See 20 C.F.R. § 404.1520; see generally Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). In step one, the Commissioner decides whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). In step two, the Commissioner determines whether the claimant is suffering from a severe impairment. If the impairment is not severe, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(a)(4)(ii). If the Commissioner finds that the claimant has a severe impairment in step two, then the analysis continues under step three, where the Commissioner must determine whether the medical evidence indicates that the claimant's impairment is equivalent to an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(a)(4)(iii). If it is, the claimant is automatically eligible for SSDI benefits. Id.

If the Commissioner finds that the claimant's impairment does not match one of the listed impairments, then the analysis continues under step four. 20 C.F.R. § 404.1520(a)(4)(iv). In step four, the Commissioner reviews whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work. Id. "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Hartranft, 181 F.3d at 359 n.1 (citing 20 C.F.R. § 404.1545(a)). If a claimant can perform his past relevant work, he is not eligible for disability benefits. 20 C.F.R. § 404.1520(f). Finally, in step five, the Commissioner considers whether other work "exist[s] in significant numbers in the national economy that the claimant can perform given his age, education, past work experience, and residual functional capacity." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002) (citing Plummer, 186 F.3d at 428). See also 20 C.F.R. § 404.1520(a)(4)(v). In this final step, "the

burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in order to deny a claim of disability." Plummer, 186 F.3d at 428.  If there is such work, the claimant is not eligible for benefits.  20 C.F.R. § 404.1520(g).

C.     The Commissioner's Decision

Under step one of his evaluation of the evidence, the ALJ determined that Plaintiff had not performed substantial gainful activity during the closed period of disability.  (R. at 15, 21.) At step two, the ALJ determined that Plaintiff had severe impairments consisting of "a neck disorder, a right arm disorder, and headaches."  (R at 15, 21.)  Plaintiff also alleged that his depression was a severe impairment, but the ALJ did not concur.  (R at 15-16, 21.)  The ALJ concluded, however, that Plaintiff's impairments did not meet or equal in severity the requirements of the pertinent listings under step three of the evaluation.  (R. at 16, 21.)

Because step three was not met, the ALJ proceeded to consider whether Plaintiff's impairment prevented him from doing his past relevant work.  The ALJ determined that Plaintiff was able to perform basic work activities, and found that Plaintiff had the RFC "to lift and/or carry ten pounds occasionally, stand and/or walk for six out of eight hours, and sit for six hours with the opportunity to sit and stand at will.  Work must not require overhead reaching or lifting with the right upper extremity."  (R. at 20-21.)  Based on this RFC, the ALJ concluded that Plaintiff was not able to return to his past relevant work as a heating and air conditioning unit installer, supervisor of air conditioning unit installers, or municipal fire commissioner.  (R. at 20-21.)

Because the ALJ found that Plaintiff could not perform his past relevant work under step

four of the evaluation, he proceeded to consider step five, where he considered the testimony of a vocational expert ("VE") and found that there were a significant number of jobs existing in the national economy that Plaintiff could perform, given his age, education, past work experience, and RFC. (R. at 20-21, 56-57, 59-62.) Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, at any time during the closed period of disability, and did not award disability benefits. (R. at 21-22.)

D.    Appeal to the District Court

Because the Commissioner has adopted the ALJ's decision as her final determination, the Court will review that decision. In support of his appeal, Plaintiff argues (1) that the ALJ's finding that Plaintiff's depression was not a severe impairment is not supported by substantial evidence in the record, and that this "error at step two infected [the ALJ's] step five conclusion, thereby rendering his decisional conclusion unsupported by substantial evidence" (Pl.'s Br. 16); and (2) that the ALJ failed to prove that Plaintiff could perform other work available in significant numbers in the economy because (a) the hypothetical question posed by the ALJ to the VE minimized the impact of Plaintiff's restrictions to his dominant right hand and arm, and (b) the VE testimony upon which the ALJ based his step five determination was "demonstrably incredible" (Pl.'s Br. 16).

    1.    Step Two: Severe Impairment

Plaintiff first argues that the ALJ erred in determining that Plaintiff's depression was not a severe impairment. In doing so, however, Plaintiff misconstrues the record, asserting that "the ALJ took the medically indefensible step of finding plaintiff to suffer no psychiatric impairment at all." (Pl.'s Br. 14.) The ALJ, however, did not deny the existence of Plaintiff's depression,

but instead found that the condition was not a severe impairment. (R. at 15-16, 21.) Although the burden placed on an applicant at step two is not an exacting one, a denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360-61 (3d Cir. 2004). For this Court to reverse the ALJ on this point, Plaintiff must demonstrate that only an unreasonable mind could find Plaintiff's depression to be merely "a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work." Id. at 360 (citing S.S.R. 85-28 (1985) and Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003)). Plaintiff has not demonstrated the above. Because this Court's role is not to weigh the evidence or substitute its conclusions for those of the fact-finder, see Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), the ALJ's determination that Plaintiff's depression was not a severe impairment is upheld.

  2. Step Five: Appropriate Jobs in the National Economy

    a. The ALJ's Hypothetical Question

When determining Plaintiff's RFC, the ALJ asked the VE to consider a hypothetical individual "who could lift and carry 10 pounds occasionally, could stand and walk for six hours and could sit for six hours but requires a sit or stand option," who was the same age and had the same level of education and past work experience as Plaintiff, and who "could do no over head reaching [sic] with the right upper extremity and no overhead lifting." (R. at 59.) Plaintiff now contends, without further elaboration, that "the ALJ's hypothetical questioning was flawed in that he minimized plaintiff's restrictions with regard to his right dominant hand and arm." (Pl.'s Br. 19.) Although Plaintiff offers no further description of what information he feels was

missing from the ALJ's hypothetical, the Court notes that Plaintiff's lawyer expanded upon the ALJ's hypothetical during his cross-examination of the VE, adding the "restriction that we're dealing with a right hand dominant individual and that individual lacks the ability to perform fine manipulations with the right hand and lacks grip strength in the right hand for more than five or 10 minutes at a time." (R. at 60-61.) The Court finds that any perceived flaws in the ALJ's incorporation of Plaintiff's right arm and hand restrictions into his hypothetical question were addressed at that time.

### b. The VE's Testimony

Finally, Plaintiff argues that the ALJ failed to meet his burden of proving that Plaintiff could perform other available work in the economy. The Court notes Plaintiff's assertion that the ALJ adopted the VE's testimony without inquiring into whether that testimony conflicted with the Dictionary of Occupational Titles ("DOT"). The Court finds that this argument has merit, and accordingly will remand the case to the Commissioner for further consideration of this issue.

Pursuant to Social Security Ruling 00-4p, "[w]hen a [VE] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [VE] evidence and information provided in the DOT." S.S.R. 00-4p (2000). Further, if the testimony does appear to conflict with the DOT, the ALJ must "elicit a reasonable explanation for the apparent conflict." Id. The Ruling requires that the explanation be made on the record and that the ALJ explain in his decision how the conflict was resolved. Burns, 312 F.3d at 127.

Here, the VE discussed three possible occupations in his testimony, referencing the DOT with regard to each:

> Telephone information clerk, code is 237.367-046. The SVP is four, unskilled, physical demand is sedentary. Approximately 2,000 jobs in the Philadelphia region, there are over 5,400,000 nationally. Charge account clerk, industry is clerical. The code is 205.367-014, the SVP is two, unskilled, the physical demand is sedentary. Approximately 3,000 jobs in the Philadelphia region and over 5,495,000 nationally. Rating clerk, code is 214.587-010, the SVP is two, unskilled, physical demand is sedentary. Approximately 500 jobs in the Philadelphia region and over 1,300,000 nationally.

(R. at 60.) In response to questions raised in cross-examination, the VE elaborated on the requirements of each job, testifying that

> the telephone information clerk is usually restricted to using a restricted keyboard, F1 through F12, typically you're using only one finger, either hand. . . . Charge account clerk is slow information retrieval and putting it on a form and you should know if you're putting information on a form you're going slow to be accurate. . . . And a rating clerk is basically looking up information in a book and assign [sic] rates for shipping.

(R. at 61.) The ALJ accepted the VE's testimony at face value, and did not inquire as to whether there was a conflict between that testimony and the DOT, as required by Ruling 00-4p. Because the ALJ had an affirmative duty to so inquire, the failure to do so is sufficient to warrant remand.

Equally troubling, however, is the perilously outdated information contained within the DOT itself. The most recent version of the DOT was published in 1991, and many of its entries have gone unrevised for substantially longer. For example, the job description for DOT § 214.587-010, "rating clerk," alternate title "telegraph-service rater," cited by the VE during his testimony, was last updated in 1977. The entirety of that description is as follows: "Counts number of words in telegrams dispatched from telegraph office, consults rates in rate book, and marks charges on duplicates of messages for use in billing customers." DOT § 214.587-010. The Court questions the existence of persons doing this job in 2006.

While the Court acknowledges that the ALJ is entitled to rely upon the information

-9-

contained in the DOT in making his determination, that information is not conclusive evidence of the existence of jobs in the national economy.  See, e.g., English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993) (citing DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983)).  The ALJ bears the burden of developing the vocational evidence at step five and, even were the VE's testimony consistent with the information contained in the DOT, the ALJ's reliance on testimony based on outdated information cannot be recognized as substantial evidence to support his determination.  See English, 10 F.3d at 1085 ("Testimony based on an outdated edition [of the DOT] should not be recognized as substantial evidence to support a determination as to the existence of jobs in the national economy.")

## CONCLUSION

For the above-mentioned reasons, the Court vacates and remands the Commissioner's determination.  An appropriate order is filed herewith.

                                                         s/Anne E. Thompson
                                               ANNE E. THOMPSON, U.S.D.J.

Dated: June 28, 2006